UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**SUSAN BROOKS DRUVA,**
**individually and as guardian of**
**next friend, D.B., an incapacitated**
**person,**

        **Plaintiff,**

**vs.**                                                   **No. 10 CV 1216 JAP/ACT**

**NEW MEXICO BEHAVIORAL HEALTH**
**INSTITUTE, a psychiatric hospital owned and**
**operated by the State of New Mexico**
**Health Department, DR. DANIEL McCOMBS,**
**DR. SEAN KILLORAN, EMMA MUELLER,**
**WENDY PRICE, DR. LUIGI DULANTO,**
**DR. TROY JONES, MABEL VASQUEZ, R.N.,**
**individually and in their official capacities,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

        Plaintiff, Susan Brooks Druva (Plaintiff) on her own behalf and as Guardian for D.B., an

incapacitated person, brings this action against the New Mexico Behavioral Health Institute

(BHI), a psychiatric hospital owned and operated by the State of New Mexico Department of

Health, and several mental health professionals employed by BHI (collectively, Defendants).

*See* FIRST AMENDED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS (42 U.S.C. §§

1982[1] and 1983), STATE LAW CLAIMS, INJUNCTIVE RELIEF AND DAMAGES (Doc. No.

---

        [1] Section 1982 provides, "[a]ll citizens of the United States shall have the same right, in
every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell,
hold, and convey real and personal property."  42 U.S.C. § 1982.  Plaintiff does not invoke this
statute in the body of the Amended Complaint and states no claim under § 1982.  The Court will
only consider Plaintiff's federal claims under § 1983.

1

37) (Amended Complaint).  Defendants ask the Court to grant summary judgment and dismiss all claims asserted in the Amended Complaint in DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 59) and MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 60) (together Motion).[2]  The Court heard oral argument on the Motion in Santa Fe, New Mexico on October 1, 2012 from Plaintiff's counsel Lee R. Hunt and from Defendants' counsel Stephen S. Hamilton.  Having considered the briefs and the arguments of counsel, the Court will grant the Motion and will dismiss the claims brought under 42 U.S.C. § 1983.  Under 28 U.S.C. § 1367(c), the Court will dismiss without prejudice the claims brought under state law.

BHI is a long-term psychiatric hospital located in Las Vegas, New Mexico.  The seven individual Defendants are Dr. Daniel McCombs, a psychologist employed by BHI, Dr. Troy Jones, PhD, the Director of BHI, Dr. Sean Killoran, a psychiatrist employed by BHI, Dr. Luigi Dulanto, a psychiatrist employed by BHI, Emma Mueller, the BHI  nurse supervisor, Wendy Price, a supervising psychologist, and Mabel Vasquez, RN employed by BHI.  Each of the individual Defendants is sued in his or her individual and official capacity.

I.  Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v.*

---

[2] In ruling on the Motion, the Court has also considered PLAINTIFF'S RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT (Doc. No. 77) and REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 78).

*First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor. *Id.* (citing Clifton v. Craig, 924 F.2d 182, 183 (10th Cir. 1991)). If a party fails to properly address another party's assertion of fact as required by Rule 56(c), "the court may: . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Because Defendants assert qualified immunity from the claims brought under 42 U.S.C. § 1983, their Motion is determined somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). "When a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to meet a strict two-part test. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "'First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." *Id.* The Court, in determining whether this showing is made, must assess whether the facts show that the Defendant's conduct violated a federal constitutional or statutory right. *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). "Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Nelson*, 207 F.3d at 1206 (citation omitted). "Ordinarily, . . . for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "If the plaintiff fails to carry

3

either part of [the] two part burden, the defendant is entitled to qualified immunity." *Garcia v. Jaramillo*, 2006 W.L. 4079681 * 3 (D.N.M. 2006) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).  If the plaintiff establishes both elements of the qualified immunity test, the court will deny summary judgment for the defendant. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2008).

    II.  Factual Background

        A.  D.B.'s Condition

    The allegations in the Amended Complaint viewed in the light most favorable to the Plaintiff are as follows.  Plaintiff's ward and son, D.B., is 42 years old and incapacitated by severe mental illness and disability.  D.B. was committed to BHI for several years.  (Am. Compl. ¶¶ 14-15.)  D.B. suffers from Chronic Disorganized Schizophrenia and a seizure disorder related to a right temporal lobe lesion.  D.B. also has Clozapine-related seizures, blepharospasm, a movement disorder related to pediatric autoimmune neuropsychiatric disorder from a strep infection, and a movement disorder from abnormality of the basal ganglia of the brain.  (*Id.* ¶ 16.)  Plaintiff alleges that D.B. can only be treated with the drug Aripiprazole (i.e. Abilify) because all Type II anti-psychotic medications are contraindicated for D.B. (*Id.*)  D.B. has a history of hospitalization for pneumonia and also suffers from asthma, severe periodontal disease, hay fever, allergic conjunctivitis, and dry eye syndrome.  (*Id.* ¶ 17.)

    In April 2008, D.B. was admitted to BHI through civil commitment. (*Id.* ¶ 18.)  Plaintiff, who is a registered nurse with experience in the care of mentally disabled individuals, alleges that during D.B.'s stay at BHI, Defendants did not provide D.B. adequate mental health care, medical care, dental care, and living conditions, which caused D.B.'s physical and mental condition to severely deteriorate. (*Id.* ¶¶ 20-22.)  On March 18, 2010, D.B. was admitted to

4

University of New Mexico Hospital (UNMH) weighing 105 pounds with severe periodontal disease and in a vegetative state. (*Id.* ¶ 22.)

B.  Lack of Adequate Medical History In D.B.'s File at BHI

Plaintiff alleges she asked on several occasions whether BHI received D.B.'s medical history file, but BHI personnel told Plaintiff that there was no medical history in D.B.'s file despite Plaintiff's execution of HIPAA releases.[3]  (*Id.* ¶ 23.)  Plaintiff alleges that Dr. Dulanto, the psychiatrist in charge of D.B.'s care, knew D.B. had insufficient medical records in his file. Plaintiff alleges that Dr. Dulanto failed to attend several treatment team meetings, failed to return Plaintiff's phone calls, and failed to adequately monitor D.B.'s medications, care, and condition. (*Id.* ¶ 26.)  Plaintiff maintains that BHI needed D.B.'s medical and psychiatric history to properly care for D.B.   (*Id.*)

Plaintiff alleges that at the time D.B. was admitted to BHI in 2008, Plaintiff attempted to explain D.B.'s various health issues to Dr. McCombs, Dr. Dulanto, Nurse Vasquez, and Psychologist Price, but no one listened to her explanations. (*Id.*)  Plaintiff alleges she hand-delivered D.B.'s medical history to his social worker, Susan Allingham, but was subsequently told that no medical history was on file for D.B.   (*Id.* ¶ 24.)[4]  Plaintiff alleges that every time she asked BHI personnel about D.B.'s records, they responded that the files contained no medical history of D.B. (*Id.*)

C.  Change of Visitation Policy; Refusal to Discuss Care; Retaliation

Plaintiff alleges that Dr. Dulanto has systematically refused to provide medical care to

---

[3] HIPAA stands for the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 300gg, et seq.

[4] Susan Allingham is not a named party in this lawsuit.

D.B. and has refused to discuss D.B.'s treatment with Plaintiff.  (*Id.* ¶ 26.)

Plaintiff alleges that when she visited D.B., he appeared dirty and unkempt with soiled or urine-soaked clothing, dirty hair and hands, food in his beard, and mismatched shoes. (*Id.* ¶ 27.) In May 2009, although D.B. had previously been allowed to walk the BHI grounds, D.B. was arbitrarily restricted to the housing unit, which contributed to his deterioration. (*Id.* ¶ 28.)

Plaintiff alleges that even though she is D.B.'s plenary guardian, she was denied access to D.B.'s records at BHI and she was not allowed to walk the grounds with D.B.  At one point, Plaintiff was restricted to the housing unit.  (*Id.* ¶ 29.)  Plaintiff alleges that BHI's actions were in retaliation for her for her involvement, or attempted involvement, in D.B.'s care.[5]  (*Id.* ¶ 30.)

At one point, Nurse Mueller, told Plaintiff that she could visit D.B. only when other patients were not present, which Nurse Mueller claims was required under HIPAA.[6] Psychologist Price later notified Plaintiff that HIPAA prohibited visits with D.B. in his living quarters, and Plaintiff had to visit D.B. in a conference room or in a public vending machine hallway.  (*Id.* ¶ 32.)  When Plaintiff attempted to discuss concerns with Price, Price stated that she never saw D.B, did not know anything about D.B., and had no knowledge of what went on at treatment team meetings. (*Id.*)

On May 29, 2009, D.B.'s birthday, a team meeting of care givers was scheduled but was cancelled due to the absence of the contract doctor named Greer. (*Id.*)  Plaintiff was prevented from seeing her son on his birthday due to confusion about her visitor's pass obtained that

---

[5] Other than Plaintiff's claim against Defendants for violations of state statutory law, Plaintiff does not specifically assert a claim of retaliation.

[6] Plaintiff contends that the policy related to visitation is an incorrect interpretation of HIPAA. (*Id.* ¶ 31.)

6

morning but declared invalid when Plaintiff returned that afternoon to serve D.B.'s birthday cake. (*Id.* ¶¶ 34-36.) [7] The following day, May 30, 2009, Plaintiff asked to see D.B.'s living quarters, but the duty nurse denied her request. Plaintiff had to visit D.B. in an isolated hallway, which caused D.B. to become agitated. (*Id.* ¶ 39.) Plaintiff was denied visitation with D.B. on his next birthday, May 29, 2010 and on June 17, 2010. (*Id.* ¶¶ 40-42.) Plaintiff alleges these actions by BHI personnel were retaliatory, against BHI's policies, arbitrary, and detrimental to D.B.'s condition causing D.B. to experience violent outbursts and depression. (*Id.* ¶¶ 40, 42.)

D.  Improper Drug Treatment

In late 2008, Plaintiff learned that D.B. had been given the drug Olanzapine a/k/a Zyprexa for three months with no doctor's order, even though all Type II anti-psychotic drugs were contraindicated for D.B. (*Id.* ¶ 47.) Plaintiff alleges other medication errors occurred at BHI. (*Id.* ¶ 49.)

Plaintiff alleges D.B. sometimes needed the drug Ativan to prevent violent outbursts. Plaintiff alleges that D.B. was not given this drug when he was anxious, and Plaintiff learned D.B. had become violent causing physical and psychological harm to himself. Plaintiff asked Nurse Vasquez to notify staff of D.B.'s need for Ativan, and Plaintiff asked Nurse Vasquez to monitor these incidents. Nurse Vasquez failed to do so. (*Id.* ¶ 50.)

In October 2010, Dr. Killoran, without Plaintiff's knowledge or consent, prescribed Thorazine, an anti-psychotic drug, because D.B. refused to attend a dermatology appointment.

---

[7] Plaintiff alleges she had to obtain a new pass when she returned to D.B.'s living quarters that afternoon. She claims that one pass had always been sufficient in the past and that this action was retaliatory. (*Id.* ¶ 36.) After obtaining a duplicate pass, Plaintiff knocked on the doors of D.B.'s unit, but no one would let her inside. Two large technicians walked up to Plaintiff and told her to come with them. Fearing her safety, she refused to go with them and left campus without seeing D.B. (*Id.* ¶ 37.)

(*Id.* ¶ 64.)

> E.  Pressure to Discharge D.B.; Failure to Account for Money; Report to Adult Protective Services

In November 2008, prior to a commitment hearing, Plaintiff alleges BHI pressured her to discharge D.B. from BHI, but Plaintiff refused since she considered D.B. dangerous and because other community programs had refused to accept D.B.  (*Id.* ¶ 52.)

Plaintiff alleges that she sent money and gifts to D.B., but BHI did not properly account for them.  (*Id.* ¶ 44.)  BHI failed to request and receive Plaintiff's approval for care by outside medical providers.  (*Id.* ¶ 46.)

Plaintiff alleges that in retaliation for her actions on behalf of D.B. including her refusal to agree to his discharge from BHI, BHI reported her to the New Mexico San Miguel County Adult Protective Services Division for failure to carry out her duties as guardian.  The charges were dismissed.  (*Id.* ¶¶ 53-54.)

Plaintiff alleges that BHI refused to account for D.B.'s monetary gifts and for D.B.'s Social Security Income and Medicaid benefits that BHI received on D.B.'s behalf.  (*Id.*¶¶ 72-73.)  At the October 1, 2012 hearing, Defendants' counsel agreed to provide to Plaintiff a report of all monetary gifts and benefits received on D.B.'s behalf, and a copy of the report was to be sent to the Court.

In late 2011, after this lawsuit was filed, BHI transferred D.B. to a residential facility. Plaintiff contends BHI discharged D.B. to limit its exposure in this lawsuit. (Resp. 4.)

> 5.  Electroconvulsive Therapy

Plaintiff alleges that in March of 2010, at Plaintiff's insistence, BHI referred D.B. to UNMH where he received electroconvulsive therapy (ECT).  The therapy was helpful, and the

doctors at UNMH told Plaintiff that the ECT therapy should be performed every two weeks. (*Id.* ¶¶ 59-62.)

Plaintiff alleges that in June 2010, Dr. Killoran discontinued ECT treatments without sufficient explanation. (*Id.* ¶ 63.) Plaintiff alleges she demanded continuation of the treatment, and on October 22, 2010, ECT was resumed. However, the doctor at UNMH had to repeat a series of ECT due to the time lapse between treatments. (*Id.* ¶¶ 66-69.)

### III. Claims in the Amended Complaint

#### A. Federal Claims

Count I is a claim under 42 U.S.C. § 1983 for deprivation of D.B.'s constitutional right to liberty, personal hygiene, sanitary living quarters, appropriate treatment, and ability to communicate with outsiders. (Am. Compl. ¶ 82.) Count II is a claim for violation of D.B.'s substantive due process right to care and safety as an individual involuntarily committed to a state institution. *See Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) (holding that institutionalized persons have a constitutionally protected liberty interest under the due process clause of the Fourteenth Amendment to reasonable care and safety, reasonably non-restrictive confinement conditions, and appropriate training within the institution). At oral argument and in the Response to the Motion, Plaintiff conceded that Counts I and II should be treated as one claim under 42 U.S.C. § 1983.

#### B. Supplemental State Law Claims: Statutory Provisions

Count III is a claim for violation of the New Mexico Mental Health and Developmental Disabilities Code (Mental Health Code). NMSA 1978 §§ 43-1-1-- 43-1-25. Plaintiff, on behalf of D.B., may sue under the Mental Health Code to the extent that she can sue under the New Mexico Tort Claims Act (NMTCA) NMSA 1978 §§ 41-4-1 et seq.

Under the NMTCA, Plaintiff, on behalf of D.B., may sue for damages "resulting from bodily injury . . . caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities." NMSA 1978 § 41-4-9.  Plaintiff may also sue on behalf of D.B. for damages "resulting from bodily injury . . . caused by the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services." NMSA 1978 § 41-4-10.

Plaintiff individually asserts that she was harmed by Defendants' violations of the Mental Health Code and Defendants' acts of retaliation against her, which also interfered with her ability to carry out her duties as guardian.  It is not clear from the statute whether Plaintiff has a cause of action even though the statute addresses guardians.  For example, Plaintiff asserts that Defendants violated § 43-1-9 (E), which provides

> The individualized treatment or habilitation plan shall be available upon request to the following persons: the client, . . . and the *client's guardian* . . . . The client's progress in attaining the goals and objectives set forth in his individualized treatment or habilitation plan shall be monitored and noted in his records, and revisions in the plan may be made as circumstances require; provided that *the persons authorized by this subsection to have access to the individualized plan shall be informed of major changes and shall have the opportunity to participate in such decision.*

NMSA 1978 § 43-1-9 (E) (emphasis added).

The Mental Health Code provides a cause of action for violations of its provisions to patients:  "[a]ny *client* who believes that his rights, . . . have been violated shall have a right to petition the court for redress. . . . The court shall grant relief as is appropriate, subject to the provisions of the Tort Claims Act." NMSA 1978 § 43-1-23 (emphasis added).  But, the Mental Health Code defines a "client" narrowly:

> any *patient* who is requesting or receiving mental health services or any person requesting or receiving developmental disabilities services or who is present in a mental health or developmental disabilities facility for the purpose of receiving such services or who has been placed in a mental health or developmental disabilities facility by the person's parent or guardian or by any court order[.]

NMSA 1978 § 43-1-3 (B) (emphasis added).  Thus, it is not clear whether Plaintiff as an individual can sue for redress for her own emotional distress allegedly caused by Defendants' violations of § 43-1-9 (E).  Since the Court is dismissing the state law claims without prejudice, Plaintiff may clarify her individual claims, and the state court may determine whether Plaintiff as D.B.'s guardian has a cause of action.

Plaintiff also claims that Defendants violated NMSA 1978 § 24-7B-9,[8] under which a mental health treatment provider must communicate to the patient any decision made regarding

---

[8] This statute is part of the Mental Health Care Treatment Decisions Act, NMSA 1978 §§ 24-7B-1 – 24-7B-16.  Section 24-7B-9 provides in relevant part:

> A. Before implementing a mental health treatment decision made for a patient, a supervising health care provider shall promptly communicate to the patient the decision made and the identity of the person making the decision.
> . . .
> E. . . . a health care provider or mental health treatment facility providing care to a patient shall comply:
> > . . .
> > (3) with a mental health treatment decision for the patient . . . made by a person then authorized to make mental health treatment decisions for the patient, to the same extent as if the decision had been made by the patient while having capacity.
>
> F. A mental health treatment provider may only decline to comply with an individual instruction or mental health treatment decision for any of the following reasons:
> > (1) the treatment requested is infeasible or unavailable;
> > (2) the facility or provider is not licensed or authorized to provide the treatment requested; or
> > (3) the treatment requested conflicts with other applicable law.

NMSA 1978 §§ 24-7B-9 (E) and (F).

11

his treatment.  Plaintiff claims that her rights under this statute have been violated because BHI

failed to communicate to her as D.B.'s guardian on several occasions.  Again, it is not clear

whether Plaintiff may sue Defendants for damages to her as guardian of D.B. for violations of

these statutory provisions.

Plaintiff, however, clearly articulates a claim on behalf of D.B. for the violation of two

sections of the Mental Health Code.  Plaintiff asserts that Defendants violated NMSA 1978 § 43-

1-6 (A)-(I), which gives each patient in psychiatric hospitals the right to receive visitors, the

right to nourishing food, comfortable bedding, clean clothing, prompt and adequate medical

care, and a clean, safe, and comfortable environment.  For example, § 43-1-6 also gives patients

the right "to be free from unnecessary or excessive medication." NMSA 1978 § 43-1-6(I).

Plaintiff asserts that Defendants also violated NMSA 1978 § 43-1-7, which provides that patients

in psychiatric hospitals are to be given "prompt treatment pursuant to an individualized treatment

plan. . . ."  Plaintiff asserts that Defendants denied D.B. these statutory rights and that

Defendants should be accountable for these actions under the NMTCA.

Count IV is a claim for medical malpractice. In her Response to the Motion for Summary

Judgment, Plaintiff withdrew this claim because she failed to name a medical expert, who had an

opinion supporting her claims , before the October 14, 2011 deadline.  Thus, the Court will

dismiss this state law claim with  prejudice.

Plaintiff asks for prospective injunctive relief (Am. Compl. ¶¶ a.-s.) and for damages for

extreme emotional distress experienced by D.B. and Plaintiff.  Plaintiff also asks for punitive

damages and attorney's fees and costs.  (*Id.* ¶¶ t.-x.)

IV.  Discussion

Defendants argue they are entitled to dismissal of all claims for damages against BHI and

the individual Defendants in their official capacities because they are not "persons" who can be liable for damages under § 1983.  In addition, Defendants assert that Plaintiff's claims against the BHI and the Defendants in their official capacities for damages are barred under the Eleventh Amendment.  Defendants further assert that Plaintiff's federal civil rights claims for damages in Counts I and II, and Plaintiff's Count III claims under the NMTCA for violations of the Mental Health Code, should be dismissed because Plaintiff failed to timely identify an expert witness to support her claims and to refute the opinion of Defendant's expert.

> A.  Plaintiff cannot seek monetary damages against BHI and Defendants in their official capacities under § 1983.

Section 1983 provides a cause of action against a "person" acting under color of state law.  42 U.S.C. § 1983.[9]  BHI, as an arm of the State of New Mexico, is not a "person" capable of being sued for damages under § 1983.  *McLaughlin v. Bd. of Tr. of State Coll.*, 215 F.3d 1168, 1172 (10th Cir. 2000) (stating   that "a governmental entity that is an arm of the state for Eleventh Amendment purposes is not a 'person' for § 1983 purposes.").  The individual Defendants in their official capacities are also not "persons" under § 1983 because suits against them are "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, the Court will dismiss Plaintiffs' § 1983 claims for damages

---

[9] Section 1983 provides,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

against BHI and the individual Defendants in their official capacity.  *See also Dickerson v. New Mexico Behavioral Health Inst.*, 335 Fed. Appx. 729, 731 (10th Cir. 2009) (unpublished opinion) (dismissing § 1983 claims against BHI).

       B.  The Eleventh Amendment bars suits for damages against States.

       Under the Eleventh Amendment of the United States Constitution, a state is immune from suits in federal court brought by its citizens unless the state consents to suit.[10]  *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).  In other words, "[t]he Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent [the States'] consent." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  The State of New Mexico has not consented to federal civil rights suits. *Jackson v. New Mexico Public Defender's Office*, 361 Fed. App'x 958, 962 (10th Cir. 2010) (unpublished decision) (stating that New Mexico has not waived immunity under Eleventh Amendment from suits for violations of federal civil rights).  A governmental entity, such as BHI, which is owned and operated by the New Mexico Department of Health, is considered an arm of the state and the Court has no jurisdiction over claims against BHI under the Eleventh Amendment.  *Id.*  In addition the individual Defendants in their official capacities are similarly protected from suits for damages under the Eleventh Amendment. *Id.*  Therefore, all of Plaintiffs' claims for damages against BHI and against the individual Defendants in their official capacities will be dismissed. *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (holding claims for damages against state are barred under Eleventh

---

    [10] *See* U.S. Const amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

Amendment).

However, Plaintiff's claims for prospective injunctive relief against Defendants in their individual capacities are allowed despite the prohibition in the Eleventh Amendment. *See Tarrant Regional Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) (stating that under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), Eleventh Amendment immunity does not extend to a state official when the plaintiff seeks only prospective, injunctive relief). However, the Court cannot order prospective injunctive relief against BHI because D.B. was transferred from BHI in late 2011. Thus, Plaintiffs' claims for prospective injunctive relief have become moot. The claims for damages under § 1983 against the Defendants in their individual capacities are not moot. Defendants argue that Plaintiff's claims for damages under § 1983 should be dismissed because they are entitled to qualified immunity from those claims.

C.  Qualified Immunity and the *Youngberg* Standard.

State officials and employees in their individual capacity are "persons" who can be sued for damages under § 1983. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). And "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* at 31. However, state officials in their individual capacities are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

The United States Supreme Court ruled in *Youngberg v Romeo* 457 U.S. 307, 324 (1982) that patients in state-operated institutions for the mentally ill have constitutionally guaranteed rights to safe conditions and to freedom from unnecessary restraint. The *Youngberg* Court also set forth the constitutional standard of care applicable to institutionalized patients: "a

professional's decision is presumptively valid unless it is such a substantial departure from the standards of the profession as to demonstrate that *no professional judgment was actually brought to bear on the decision*." *Id.* at 323 (emphasis added).

Under this standard, Plaintiff has the burden to prove that Defendants, "consciously disregarded a known or obvious risk" to D.B. or that Defendants each "abdicated [his or her] duty to act professionally, thereby causing [D.B.] harm." *Whitley v. New Mexico Children, Youth & Families Dept.*, 184 F. Supp. 2d 1146, 1157 (D. N.M. 2001) (applying *Youngberg* standard to children in foster care). This standard requires Plaintiff to show more than negligence: it requires an abdication of professional responsibility. *Youngberg*, 457 U.S. at 323 (requiring a showing that the actions of the defendant are "such a substantial departure from professional judgment, practice or standards as to demonstrate that the [defendant] actually did not base the decision on such a judgment."); *see also Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1149 (3d Cir. 1990) (denying summary judgment to defendants who were professionals caring for mentally disabled resident of state institution because defendants did not protect plaintiff even though they were aware that an employee of the institution sexually abused the plaintiff, that the employee had frequent and unsupervised access to the plaintiff, and that another attack was possible). Plaintiff must show that Defendants abdicated their duty to act professionally and that this abdication caused harm to D.B. *Id.* If Plaintiff fails to meet this burden, Defendants will be entitled to qualified immunity from Plaintiff's § 1983 claims in

Counts I and II. [11]

D.  Defendants' Expert Opinion

Dr. Patricia Kelly, a psychiatrist employed by the Albuquerque VA Medical Center,

reviewed D.B.'s medical records dating from April 2008 through October 2011, which consisted

of over 2500 pages. (Mot. Ex. 2.)  In her report dated December 11, 2011, Dr. Kelly opines that

the providers at BHI appropriately cared for D.B. to the best of their ability.  (*Id.* at 6.)

> In my opinion as a psychiatrist who is board certified in both adult and forensic
> psychiatry and who has spent many years caring for mentally ill patients in both inpatient
> and outpatient settings and also reviewing records of patient care {please see my
> curriculum vitae}, professional judgment was exercised in D.B.'s care at NMBHI.  I do
> not find documentation that NMBHI "intentionally withheld medical treatments", nor did
> I see that D.B. was prescribed the "wrong medications." It is noted in the records that
> D.B.'s medical treatment of electroconvulsive therapy (i.e. ECT) was reasonably and
> appropriately addressed during his stay with NMBHI.  A note written by Dr. Harris
> [UNM doctor] on November 13, 2009 documented that Dr. Harris spoke with the
> plaintiff about ECT for D.B.  Dr. Harris stated in the note that when he asked the
> plaintiff, she agreed to send UNMPC the "info sheet" and medical records for review to
> determine whether this procedure would be appropriate for D.B.  Dr. Harris also
> documented that plaintiff "says she is not yet willing to consent to ECT and likely will
> call Dianne B (rest of name illegible) herself to discuss it." . . . From my review, the staff
> of NMBHI was reasonable in their approach to and attempted to work with the plaintiff
> in a timely manner in the treatment of D.B. under the circumstances.
> . . .
> In contrast to the allegation set forth in the complaint, my review of these NMBHI and
> UNMPC records demonstrates that NMBHI did meet the standard of care in seeking
> treatment for D.B.  More accurately, the records indicate that it was the plaintiff who
> often presented obstacles to moving forward with D.B.'s care at NMBHI.
> . . .
> NMBHI staff took great care in obtaining the plaintiff's approval in non-emergency
> situations prior to the administration of or change in medications for D.B.
> . . .
> It is my opinion that NMBHI providers more than met the standard of care when
> prescribing medications for D.B.

---

[11] Plaintiff asserts that she is alleging individual claims for violations of her personal First
Amendment right of association with D.B. and for violation of her personal Fourteenth
Amendment substantive due process rights.  These claims, however, have not been properly
alleged in the Amended Complaint.

(Mot. Ex. 2 at 2-5.)  Dr. Kelly also included several examples illustrating that BHI personnel "responded quickly and appropriately to D.B. when he was having episodes of psychiatric decompensation."  (*Id.* at 4.)  She outlines instances on July 26, 2010, on August 8, 2010 and on September 28, 2010 when BHI personnel responded to deterioration of D.B.'s mental state, noting that sometimes D.B. illustrated a negative attitude toward treatment and that sometimes D.B.'s attitude was revealed in suicidal statements.  Also, Dr. Kelly noted instances in which D.B. was given the drug Ativan when he became aggressive toward staff or other patients in contrast to Plaintiff's assertion that the staff failed to administer Ativan when D.B. became "agitated."  Dr. Kelly stated that in more acute situations, "NMBHI staff acted swiftly to help D.B. when his mental illness caused behavior that put him and others at risk of harm."  (*Id.* at 6.)

     E.  Plaintiff's failure to submit an expert opinion is fatal to her § 1983 claims.

Defendants maintain that without an expert opinion contradicting Dr. Kelly's opinion, Plaintiff's § 1983 and NMTCA claims for violations of the Mental Health Code should be dismissed because, as a matter of law, Plaintiff cannot show that Defendants breached the standard of care with respect to D.B.'s treatment.  Plaintiff counters that a lay person can determine whether Defendants breached the duty to care for D.B., especially with respect to his living conditions and cleanliness.  In the alternative, Plaintiff asks for extra time (30 days) to

obtain an expert to support her case. [12]

 Plaintiff cites the case *Whitley v. New Mexico Children, Youth & Families Dep't*, 184 F. Supp. 2d 184 (D. N.M. 2001) for the proposition that no expert opinion is necessary to show that Defendants violated D.B.'s constitutional rights.  In *Whitley*, a mentally disabled foster child was raped by another resident of Mesilla Valley Hospital (MVH), a New Mexico treatment facility. In ruling on the Defendants' motion for summary judgment raising qualified immunity, Magistrate Judge Leslie Smith determined that to establish a violation of the child's substantive due process rights, Plaintiff did not need expert opinion because Plaintiff's burden was to show that in *placing the child at MVH*,  "the responsible state social workers *knew of the asserted danger to the child, or failed to exercise professional judgment with respect to the child*, . . . ." *Id.* at 1155 (emphasis added).  In *Whitley*, without an expert opinion, a jury could easily determine whether the defendants knew of, but did not address, the danger of rape in this facility or whether defendants failed to exercise professional judgment in placing the child in MVH.   *Id.* Magistrate Judge Smith stated the standard for liability: "the due process issue is not a question

---

[12] The record in this case shows that Plaintiff was given sufficient time to acquire an expert opinion supporting her claims.  In addition, Plaintiff has failed to meet the requirements of Fed. R. Civ. P. 56(d) to show that additional discovery is needed to properly oppose summary judgment.  The case was originally filed on December 17, 2010.  The parties agreed to dismiss the original complaint without prejudice in June 2011.  The deadline to name an expert was then extended to October 14, 2011.  However, Plaintiff did not file her amended complaint until October 19, 2011, after the deadline to name an expert.  It is clear that Plaintiff's counsel, Lee Hunt, who entered his appearance on July 18, 2011, knew of the extended deadline.  Mr. Hunt appeared at the scheduling conference held on July 30, 2011, and Mr. Hunt received Magistrate Judge Torgerson's ORDER AMENDING CASE MANAGEMENT DEADLINES (Doc. No. 36). On October 19, 2011, Mr. Hunt filed on behalf of Plaintiff a CERTIFICATE OF SERVICE (Doc. No. 40) in which he certified that he sent a copy of DISCLOSURE OF EXPERT WITNESSES PURSUANT TO SCHEDULING ORDER to Defendants' counsel.  Neither party has submitted a copy of this document.  In sum, this case had been pending for almost two years. The Court will not further extend the deadline to name a mental health expert as requested by Plaintiff.

of negligence or malpractice; resolution rests on whether there was an abdication of duty, not whether there was a breach of a standard of care." *Id.* at 1162 (emphasis added).  Although Judge Smith determined that no expert was required, he nevertheless concluded, "based on the evidence in the record, Plaintiffs have failed to meet this formidable standard.  Defendants did not abandon their duty with respect to placement of [the child]." *Id.*

Plaintiff points to *Whitley* and argues that she does not need an expert to prove that Defendants failed to properly care for D.B.  Although Magistrate Judge Smith applied the *Youngberg* standard in *Whitley*, Magistrate Judge Smith determined that no expert opinion was necessary; but he ruled that the plaintiff failed to present evidence showing that defendants abdicated their duty to act professionally in placing the child in MVH.  *Whitley* is distinguishable from this case.  In this case, Plaintiff asks the fact-finder to examine whether Defendants adequately cared for D.B., a severely mentally ill patient.  Moreover, in this case, Defendants have come forward with evidence that Defendants exercised their professional judgment in regard to D.B.'s care.  Thus, due to the complexity of D.B.'s condition and in response to Dr. Kelly's opinion, Plaintiff needs to come forward with some evidence that Defendants failed to exercise their professional judgment in caring for D.B. in order to survive summary judgment dismissing her § 1983 claims.

Plaintiff has attached unauthenticated medical records and incident reports to her Response, but these documents are inadmissible hearsay and may not be considered under Rule 56.  *See Whitley*, 184 F. Supp. 2d at 1159 (noting that unauthenticated emails, progress notes, and physician's orders are inadmissible as summary judgment evidence).  Since Plaintiff has presented no evidence to refute Dr. Kelly's opinion that Defendants fulfilled their professional duty to care for D.B., Plaintiff failed to show Defendants violated D.B.'s clearly established

constitutional rights under the *Youngberg* standard.  Thus, Defendants are entitled to qualified immunity from the § 1983 claims, and Counts I and II will be dismissed.

G.  Plaintiff's state law claims will be dismissed without prejudice.

As for Plaintiff's Count III negligence claims under the NMTCA for violations of the Mental Health Code, Defendants' argue that they are entitled to summary judgment because Plaintiff has failed to submit an expert opinion supporting her claims to counter Defendants' expert opinion that Defendants were not negligent in caring for D.B.  New Mexico generally requires plaintiffs to submit expert opinions to support medical malpractice claims.  *Lopez v. Reddy*, 2005-NMCA-054, ¶ 9, 113 P.3d 377, 137 N.M. 554. *See also Hynoski v. John C. Harmston, M.D., P.C.*, Case No. 29,434, 2009 WL 6567163, *1 (N.M. Ct. App. June 17, 2009) (unpublished opinion) (upholding grant of summary judgment in favor of defendant in medical malpractice case because plaintiff's did not submit an expert opinion to counter defendant's expert opinion). "However, if negligence can be determined by resort to common knowledge ordinarily possessed by an average person, expert testimony as to standards of care is not essential." *Toppino v. Herhahn*, 100 N.M. 564, 673 P.2d 1297 (1983) (reversing grant of directed verdict for defendant finding that expert not necessary to determine misplacement of breast implant).

Although Plaintiff and Defendants have not provided a New Mexico case on whether expert opinion is necessary to show negligence under the NMTCA and the Mental Health Code, Plaintiff's Count III claim is very similar to a medical malpractice claim because Plaintiff's claims cannot be decided using "common knowledge ordinarily possessed by an average person." *Id.*  Plaintiff asks a fact-finder to determine that Defendants did not make proper medication and treatment decisions with respect to the care of D.B., a person with complex

21

mental illness and medical issues.  It is likely that New Mexico courts would require the testimony of a mental health expert to show that these Defendants departed from the standard of care with respect to D.B.'s treatment at BHI.  Plaintiff argues that no expert is needed to prove that Defendants provided substandard living conditions, cleanliness, and nutrition at BHI. Plaintiff submits that a lay person can assess basic living conditions without the aid of an expert. However, even as to living conditions for D.B., a state court might find an expert opinion necessary to determine whether Defendants breached their duty of care.[13]  On this important issue, a New Mexico state court is better qualified to determine whether Plaintiff must submit an expert opinion to survive summary judgment on Count III.  Therefore, the Court will dismiss Count III without prejudice.

In conclusion, the Court will grant summary judgment dismissing Plaintiff's federal § 1983 claims because Defendants are entitled to qualified immunity as to those claims.  Without the § 1983 claims, the Court will no longer have original jurisdiction over this action.  *See* 28 U.S.C. § 1331 (providing that federal district courts have original jurisdiction of all civil actions "arising under the Constitution, laws, or treaties of the United States.").  Although the Court has supplemental jurisdiction over the state law claim in Count III, under 28 U.S.C. § 1367, the Court may decline to exercise its supplemental jurisdiction to allow Plaintiff to pursue those

---

[13] Dr. Kelly stated that "NMBHI staff worked with D.B. in multiple therapeutic ways to help ease the symptoms of his mental illness and to structure his time while hospitalized there. The use of medications, observation, activities, recreation time, group activities, exercise, classes, peer interactions and more were implemented appropriately and promptly in D.B.'s care at NMBHI."  (Mot. Ex. 2 at 6.)  It is apparent that even living conditions for the mentally ill must be carefully structured, a subject with which lay persons are not familiar.  Thus, an expert opinion might be necessary to aid a fact-finder in determining whether Defendants negligently failed to provide appropriate living conditions in violation of the Mental Health Code.

claims in state court.[14]  Thus, dismissal of the state law claim in Count III without prejudice is also appropriate for this reason.

The Court notes that Plaintiff alleged in several areas of her Amended Complaint that Defendants retaliated against her for trying to involve herself in D.B.'s care and treatment at BHI.  However, Plaintiff did not specifically assert a retaliation claim in the Amended Complaint.  In addition, Plaintiff complained that Defendants failed to account for monetary gifts sent to D.B. and for Social Security and Medicaid benefits received on behalf of D.B., but Plaintiff did not ask for an accounting in the Amended Complaint.  At the hearing on October 1, 2012, the Court asked Defendants' counsel to provide a report to Plaintiff, and send a copy to the Court, showing the receipt and expenditures of those gifts and an explanation of the government

---

[14] Section 1367 of title 28 provides:

(a) Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .
. . .
(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

benefits that D.B. received.  Defendants were to have submitted the report to Plaintiff and to Court chambers by October 31, 2012.

IT IS ORDERED that the DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 59) is granted in part and denied in part as follows:

1.  Counts I and II of the FIRST AMENDED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS (42 U.S.C. §§ 1982 and 1983), STATE LAW CLAIMS, INJUNCTIVE RELIEF AND DAMAGES (Doc. No. 37) will be dismissed with prejudice;

2.  Count III of the FIRST AMENDED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS (42 U.S.C. §§ 1982 and 1983), STATE LAW CLAIMS, INJUNCTIVE RELIEF AND DAMAGES (Doc. No. 37) will be dismissed without prejudice; and

3.  Count IV of the FIRST AMENDED COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS (42 U.S.C. §§ 1982 and 1983), STATE LAW CLAIMS, INJUNCTIVE RELIEF AND DAMAGES (Doc. No. 37) will be dismissed with prejudice and by stipulation of the parties.

_____
SENIOR UNITED STATES DISTRICT JUDGE